**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Shaul Stern, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | )   CIVIL ACTION NO. 00-2602-RCL |
| The Islamic Republic of Iran, *et al.*, | ) |
| Defendants. | ) |
| | ) |
| Susan Weinstein, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | )   CIVIL ACTION NO. 00-2601-RCL |
| The Islamic Republic of Iran, *et al.*, | ) |
| Defendants. | ) |
| | ) |
| Jenny Rubin, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | )   CIVIL ACTION NO. 01-1655-RMU |
| The Islamic Republic of Iran, *et al.*, | ) |
| Defendants. | ) |
| | ) |
| Seth Charles Ben Haim, *et al.*, | ) |
| Plaintiffs, | )   CIVIL ACTION NO. 02-1811-RCL |
| v. | )   CIVIL ACTION NO. 08-520-RCL |
| The Islamic Republic of Iran, *et al.*, | ) |
| Defendants. | ) |

| | |
|---|---|
| Ruth Calderon-Cardona, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | MISC. NO. 14-648 |
| ) | |
| Democratic People's Republic of Korea, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| Mary Nell Wyatt, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-502-RCL |
| ) | |
| Syrian Arab Republic, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## PLAINTIFFS-JUDGMENT CREDITORS PRELIMINARY RESPONSE TO INTERNET CORPORATION FOR ASSIGNED NAME AND NUMBERS' MOTION TO QUASH WRIT OF ATTACHMENT

Plaintiffs-Judgment Creditors' ("Plaintiffs"), by and through their undersigned counsel, preliminarily respond as follows to the motion by non-party Internet Corporation for Assigned Names and Numbers ("ICANN") to quash the Writs of Attachment served by Plaintiffs in the above entitled action (the "Motion to Quash"):

Currently pending before this Court is Plaintiffs' motion requesting discovery regarding the numerous unilateral factual assertions made by ICANN in its Motion to Quash, along with related extensions of time for Plaintiffs' opposition to the Motion to Quash and related filings, hearings, and liens (the "Motion for Discovery").

A copy the Motion for Discovery is annexed hereto as Exhibit A.

2

As set forth in Plaintiffs' Motion for discovery, Plaintiffs need to take discovery in order to present the complete evidentiary picture in opposition to ICANN's Motion to Quash and its claimed factual assertions.

These factual assertions include claims that 1) the assets covered by the Writs of Attachment (the .IR, .SY and .KP country code top-level domains ("ccTLDs"), related non-ASCII ccTLDs, and supporting IP addresses (collectively, the "Assets")) are not "property"; 2) the Assets are not "owned" by the judgment debtors; 3) the Assets are not within the territorial reach of this Court; and 4) ICANN cannot transfer the Assets to Plaintiffs.  Plaintiffs' Motion for Discovery also explains the state of discovery to date regarding these issues, including information showing apparent treatment of ccTLDs as property by governments and corporations and ICANN's apparent control over and ability to transfer of certain ccTLDs.

Plaintiffs' Motion for Discovery also explains why Plaintiffs believe that discovery will be fruitful in opposing ICANN's Motion to Quash and obtaining admissible evidence likely to contradict ICANN's position.  Although Plaintiffs need the requested discovery in order to present this Court with the complete evidentiary picture, Plaintiffs, in the Discovery Motion, have already presented this Court with considerable reason to disbelieve and question the factual[1] and legal[2] assertions presented by ICANN in its Motion to Quash.

---

[1] For example, numerous ccTLDs have been monetized by their respective governments (*e.g.* .CO and .TV), moved away from prior registries or registrars (*e.g.* .AU and .ZU) and claimed as government property (.UM).

[2] As mentioned in previous filings, legal authority exists which supports the positions Plaintiffs expect to establish and bolster through the sought discovery, that the Assets are property and can be transferred by ICANN.  *See, e.g. Office Depot Inc. v. Zuccarini*, 596 F. 3d 696 (9th Cir. 2010) (holding that second level domain name was property of judgment debtor and subject to transfer to receiver in action pending in jurisdiction where registry or registrar was located); *Kremen v. Cohen*, 337 F. 3d 1024 (9th Cir. 2003) (second level domain name was property subject to conversion claim against registrar for wrongful transfer).

Accordingly, for the reasons set forth herein and in the attached Motion for Discovery, Plaintiffs respectfully request that the Court grant the pending Motion for Discovery, which *inter alia*, would permit Plaintiffs to file a complete opposition to ICANN's Motion to Quash on the merits and with the benefit of fulsome discovery on the factual issues underlying the novel legal questions raised by these proceedings.

Dated:   September 30, 2014

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

By:   _____

Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627
RTolchin@BerkmanLaw.com

RAINES FELDMAN, LLP
*Attorneys for the Plaintiffs*

By:   _____
Erik Syverson

9720 Wilshire Boulevard, Fifth Floor
Beverly Hills, California 90212
310-440-4100
Fax: 310-691-1036
ESyverson@RainesLaw.com

## CERTIFICATE OF SERVICE

I hereby certify on this 30th day of September, 2014, that a copy of the forgoing Plaintiffs-Judgment Creditors Response to Internet Corporation for Assigned Name and Numbers' Motion To Quash Writ Of Attachment was served via United States District Court ECF filing system and/or via email on counsel for ICANN:

Tara Lynn R. Zurawski (DC Bar No. 980960)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001-2113

Eric Enson (*pro hac vice*)
JONES DAY
555 S. Flower Street
50th Floor
Los Angeles, CA 90071

Jeffrey A. LeVee (*pro hac vice*)
JONES DAY
555 S. Flower Street
50th Floor
Los Angeles, CA 90071

Dated:  September 30, 2014

By:     /s/ Erik S. Syverson
Erik S. Syverson (*pro hac vice*)

EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Shaul Stern, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 00-2602-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Susan Weinstein, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 00-2601-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Jenny Rubin, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 01-1655-RMU |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Seth Charles Ben Haim, *et al.*, | ) |
| | ) |
| Plaintiffs, | )   CIVIL ACTION NO. 02-1811-RCL |
| | ) |
| v. | )   CIVIL ACTION NO. 08-520-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |

1

| | |
|---|---|
| Ruth Calderon-Cardona, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | MISC. NO. 14-648 |
| ) | |
| Democratic People's Republic of Korea, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |
| Mary Nell Wyatt, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 08-502-RCL |
| ) | |
| Syrian Arab Republic, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MOTION BY PLAINTIFFS-JUDGMENT CREDITORS
## FOR SIX MONTH DISCOVERY PERIOD

COME NOW the plaintiffs, by and through their undersigned counsel, and respectfully move this Court pursuant to Fed. R. Civ. P. 69 for an order:

(1) **AUTHORIZING** the parties to engage in discovery pursuant to the Federal Rules of Civil Procedure, specifically Federal Rules 26 and 30-34, with respect to the Writs of Attachment served by plaintiffs on Garnishee-The Internet Corporation for Assigned Names and Numbers ("ICANN") and the Motion to Quash Writs of Attachment filed by ICANN, and **DIRECTING** that such discovery shall be completed by March 30, 2015;

(2) **ENLARGING** the plaintiffs' time to serve opposition to the Motion to Quash Writs of Attachment *sine die,* with a due date to be set after the completion of discovery;

2

(3)     **DIRECTING** that oral argument and any evidentiary hearing on the Motion to Quash be scheduled after briefing on the Motion to Quash is completed;

(4)     **ENLARGING** plaintiffs' time to file (i) the Traverse of ICANN's Answers pursuant to D.C. Code §§ 16-522, 16-553 and/or D.C. Sup. Ct. Rule 69-I(d) and/or (ii) the Motion for Judgment of Condemnation pursuant to D.C. Code § 16-556 and/or D.C. Sup. Ct. Rule 69-I(e) until after the Court enters an Order either granting or denying ICANN's Motion to Quash; and

(5)     **EXTENDING** plaintiffs' lien on the judgment debtors' top level domain names and internet protocol addresses in accordance with this Order.

Pursuant to Local Rule 7(m), plaintiffs' counsel state that plaintiffs' counsel conferred with garnishee's counsel regarding this matter in a good-faith effort to determine whether the parties could reach an agreement, and that garnishees have indicated that they will oppose this motion.

Dated:    September 25, 2014

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

By:    _____
        Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627
RTolchin@BerkmanLaw.com

RAINES FELDMAN, LLP
*Attorneys for the Plaintiffs*


By:   /s/ Erik Syverson
        Erik Syverson

9720 Wilshire Boulevard, Fifth Floor
Beverly Hills, California 90212
310-440-4100
Fax: 310-691-1036
ESyverson@RainesLaw.com

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 2

FACTS ............................................................................................................................ 5

  A.  Procedural Background............................................................................................ 5

  B.  ICANN's Motion to Quash ..................................................................................... 6

  C.  Plaintiffs' Need for Additional Discovery ............................................................ 10

    1.  Impeaching Documents Demonstrate ICANN's Misleading Position.......................... 10

    2.  Discovery Sought by Plaintiffs. ................................................................... 11

ARGUMENT................................................................................................................... 16

  A.  Procedural Framework........................................................................................... 16

  B.  The Court Should Approve a Discovery Period ................................................... 18

CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

### Federal

*Brooks v. Kerry*,
   2014 WL 1285948, *9 (D.D.C. March 31, 2014) ...................................................... 18

*CXS Transp., Inc. v. Denardo*,
   2013 WL 1213067, *7 (E.D. Mich. March 25, 2013) ............................................... 18

*Dinkel v. Medstar Health, Inc.*,
   286 F.R.D. 28, 31 (D.D.C. 2012) ............................................................................. 19

*Falicia v. Advanced Tenant Services, Inc.*,
   235 F.R.D. 5, 7 (D.D.C. 2006) ................................................................................. 16

*Lumber Liquidators, Inc. v. Sullivan*,
   939 F. Supp. 2d 57, 59-60 (D. Mass. 2013) ............................................................. 16

*Richie v. Vilsack*,
   287 F.R.D. 103, 105 (D.D.C. 2012) .......................................................................... 19

*Salinas v. AT&T Corp.*,
   2008 WL 8053983 (S.D. Tex. March 5, 2008) ......................................................... 18

*Seed Co., Ltd. v. Westerman*,
   840 F. Supp. 2d 116, 121 (D.D.C. 2012) .................................................................. 19

## STATUTES

### State

District of Columbia Code and Superior Court Rules.
   Rule 69(a)(1) ....................................................................................................... 16, 17

D.C. Code
   § 16-544 ..................................................................................................................... 17

D.C. Code
   sections 16-551 and 16-553 ....................................................................................... 17

D.C. Code
   § 16-556 ............................................................................................................... 17, 21

D.C. Code
   Section 16-550............................................................................................................... 17

District of Columbia Superior Court
   Rule 69-I(a) and (b)...................................................................................................... 17

D.C. Code
   § 551.............................................................................................................................. 17

D.C. Code
   § 553.............................................................................................................................. 17

D.C. Code
   §§ 16-522, 16-553......................................................................................................... 21

D.C. Sup. Ct.
   Rule 69-I(d)................................................................................................................... 21

D.C. Code
   § 16-556......................................................................................................................... 21

D.C. Sup. Ct.
   Rule 69-I(e)................................................................................................................... 21

### **Federal**

Fed. R. Civ. P.
   Rule 69(a)...................................................................................................................... 16

Fed. R. Civ. P.
   Rule 69(a)(1)................................................................................................................. 16

Fed. R. Civ. P.
   Rule 69(a)(2).......................................................................................................... 16, 17

Federal
   Rule 56 .......................................................................................................................... 18

Federal
   Rule 56(d).................................................................................................................18, 19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Shaul Stern, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 00-2602-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Susan Weinstein, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 00-2601-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Jenny Rubin, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 01-1655-RMU |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Seth Charles Ben Haim, *et al.*, | ) |
| | ) |
| Plaintiffs, | )   CIVIL ACTION NO. 02-1811-RCL |
| | ) |
| v. | )   CIVIL ACTION NO. 08-520-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| Ruth Calderon-Cardona, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      MISC. NO. 14-648 |
| | ) |
| Democratic People's Republic of Korea, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| Mary Nell Wyatt, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )      CIVIL ACTION NO. 08-502-RCL |
| | ) |
| Syrian Arab Republic, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS-JUDGMENT CREDITORS' MOTION FOR DISCOVERY

### INTRODUCTION

Plaintiffs-Judgment Creditors' ("Plaintiffs") hold unsatisfied judgments for millions of dollars against the respective judgment debtors (collectively, the "Judgment Debtors") arising from terrorist attacks carried out with the assistance of the Judgment Debtors, as follows:

Stern – The plaintiffs in *Stern, et al. v. Islamic Republic of Iran, et al.* (the "Stern Plaintiffs") hold an unsatisfied judgment in the amount of $13 million against the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS") and other defendants, jointly and severally. In addition, the Stern Plaintiffs hold a final judgment against MOIS and other defendants in the amount of $300 million, jointly and severally. That judgment

arose from a terrorist suicide bombing in a Jerusalem market carried out by agents of Iran on July 30, 1997, in which the Stern Plaintiffs were severely harmed.

Weinstein – The plaintiffs in *Weinstein, et al. v. Islamic Republic of Iran, et al.* (the "Weinstein Plaintiffs") hold an unsatisfied judgment in the amount of $33,248,164 against Iran, the MOIS and other defendants, jointly and severally. In addition, the Weinstein Plaintiffs hold a final judgment against MOIS in the amount of $150,000,000, jointly and severally. That judgment arises from a terrorist suicide bombing on a Jerusalem bus carried out by agents of Iran on February 25, 1996, in which the Weinstein Plaintiffs were severely harmed.

Rubin – The plaintiffs in *Rubin, et al. v. Islamic Republic of Iran, et al.* (the "Rubin Plaintiffs") hold an unsatisfied judgment in the amount of $71.5 million against Iran, the MOIS and other defendants, jointly and severally. In addition, the Rubin Plaintiffs hold a final judgment against MOIS and other defendants in the amount of $187,500,000, jointly and severally. That judgment arises from a terrorist suicide bombing carried out by agents of Iran on September 4, 1997, in which the Rubin Plaintiffs were severely harmed.

Ben Haim – The plaintiffs in *Ben Haim, et al. v. Islamic Republic of Iran, et al.* (the "Ben Haim Plaintiffs") hold two judgments in the aggregate amount of $316 million against Iran and MOIS. Those judgments arise from a terrorist suicide bombing in an outdoor pedestrian mall in Jerusalem carried out by agents of Iran on April 9, 1995, in which the Ben Haim Plaintiffs were brutally injured.

Calderon-Cardona – The plaintiffs in *Calderon-Cardona, et al. v. the Democratic People's Republic of Korea* (the "Calderon-Cardona Plaintiffs") hold an unsatisfied judgment in the amount of $378 million against the Democratic People's Republic of Korea ("DPRK" or "North Korea") and the Cabinet General Intelligence Bureau ("North Korean Intelligence

Service"), jointly and severally. That judgment arises from the May 30, 1972 terrorist attack at Israel's Lod Airport on a group of Puerto Rican pilgrims who had come to Israel to visit Christian holy sites.

Wyatt – The plaintiffs in *Wyatt, et al. v. the Syrian Arab Republic, et al.* (the "Wyatt Plaintiffs") hold an unsatisfied judgment in the amount of $338 million against the Syrian Arab Republic ("Syria"). That judgment arises from the August 30, 1991 abduction of U.S. citizens Marvin T. Wilson and Ronald Wyatt by terrorists belonging to the Kurdistan Workers Party ("PKK") which held them hostage for a period of twenty-one days.

Plaintiffs have come to this Court in an effort to satisfy their judgments and redress the horrific damage that they have had to endure at the hands of the Judgment Debtors. This motion is in furtherance of Plaintiffs' judgment creditor rights and will allow this Court to make a fully informed decision on a very important and novel legal question: Whether or not judgment creditors may seize internet country code top level domains ("ccTLDs") and/or revenues derived therefrom in order to satisfy legal judgments.

The respondent garnishee, the Internet Corporation for Assigned Names and Numbers ("ICAAN") has moved to quash the writs of attachment served by the plaintiffs / judgment creditors. In order to oppose ICANN's motion and answer this important question, fairness and the interests of justice require that the Plaintiffs be allowed to conduct robust discovery in order to challenge the numerous factual representations ICANN has put forth in its moving papers. In the alternative, Plaintiffs should be granted additional time to oppose ICANN's motion due to its tardy production of documents responsive to Plaintiffs' requests.

# FACTS

## A.      Procedural Background

Plaintiffs are victims of terrorism and their families who have obtained judgments amounting to millions of dollars in the aggregate against the governments of Iran, Syria and North Korea, respectively, for the roles played by those governments in the terrorist attacks in which plaintiffs were harmed.  Although the Plaintiffs have diligently searched for assets in the United States against which to enforce their judgments, and have made some recoveries, these judgments remain largely unsatisfied.

As part of their ongoing judgment enforcement efforts, on or about June 24, 2014, Plaintiffs served ICANN, as a third party garnishee holding assets of the respective Judgment Debtors, with writs of attachment ("Writs of Attachment") issued by the Clerk of Court for the District of Columbia District Court, attaching the Judgment Debtors' valuable internet assets held by ICANN. These assets include the top level domains ("TLDs") and internet protocol ("IP") addresses of the respective Judgment Debtors (collectively, the "Assets"). The writs of attachment consist of a one page court form accompanied by two short statutory interrogatories. Also on or about June 24, 2014, Plaintiffs served ICANN with a Rule 45 document production subpoena ("Subpoena") containing a request for seven limited categories of documents.

ICANN only produced the documents on September 19, 2014 after a stipulated protective order was entered by this Court.  Declaration of Steven T. Gebelin ("Gebelin Decl.") ¶ 11.  The production consisted of approximately 1660 of pages of documents that appear to be correspondence relating to IANA functions and ccTLDs at issue in this proceeding. *Id.*

On July 29, 2014, ICANN moved to quash the Writs of Attachment (the "Motion to Quash"). DE 29. As explained herein, the tardy and limited document production does not

address the most factually relevant issues in the Motion to Quash. On August 11, 2014, Plaintiffs moved the Court for an order extending the deadline to file an opposition to the Writs of Attachment to September 30, 2014. (DE 34). In that initial motion for additional time, Plaintiffs alerted the Court that Plaintiffs would be filing a subsequent motion to take discovery and to extend the time for Plaintiffs to file their opposition to the Motion to Quash by "a period of months." (DE 39, pp. 6-8). The Court granted the Plaintiffs' initial motion for a continuance until September 30, 2014. (DE 41).

Plaintiffs now move the Court to be allowed to conduct discovery regarding the issues raised by the Motion to Quash. Plaintiffs also move the Court for a commensurate extension to file an opposition to the Motion to Quash allowing for the discovery to be completed before the opposition to that motion is due. As laid out in the declaration of counsel, Plaintiffs satisfied their meet and confer requirements before filing the instant motion. Declaration of Erik S. Syverson ¶ 3, Exs. A-C.

**B.    ICANN's Motion to Quash**

The Motion to Quash contains a twenty-two page memorandum of law, citing to approximately 60 cases in addition to several statutes and other authorities. It is also supported by two affidavits and more than 240 pages of exhibits.

This is an extremely complex matter, which places before the Court novel issues of law and fact concerning the global operation of the internet, ICANN's role in those operations, and particularly the nature of top level domains and internet protocol addresses. These are matters of first impression that involve complicated technical facts. Notwithstanding the many cases which ICANN cited, it did not cite to any cases analyzing the nature of a foreign government's rights to

its country code top level domains, much less the rights of a foreign government that is also a state sponsor of terrorism.

In its Motion to Quash, ICANN makes a number of arguments which are highly fact-specific. ICANN's legal arguments are as follows: (i) country code TLDs ("ccTLDs") are not property subject to attachment; (ii) ccTLDs are not owned by the governments of the countries to which they are assigned; (iii) ccTLDs are not within the District of Columbia; (iv) even if the ccTLDs are property within the United States, this Court lacks jurisdiction over the FSIA because the ccTLDs are not used for commercial activity in the United States; (v) ICANN does not have the unilateral power or authority to re-delegate the ccTLDs and doing so would interfere with contractual relationships; (vi) forced re-delegation would destroy the value of the ccTLDs, the rights of domain name holders in these ccTLDs and jeopardize the manner in which the internet operates.

In support of these arguments, ICANN has cited to 14 different documents totaling some 240 pages. These documents do not present a complete picture with regard to the relevant facts—particularly with respect to the nature and ownership of ccTLDs, ICANN's role in delegating and transferring such ccTLDs and the economic value of ccTLDs. Also, ICANN has presented virtually no facts concerning its role in the distribution of IP addresses or the ownership and value of IP addresses. Additionally, the factual declaration of John Jeffrey submitted by ICANN and the factual summary in the Motion to Quash purport to present ICANN policies and the views of the global internet community as one unified group with a solid and unchallenged position that ccTLDs are not property. However, Plaintiffs' research to date demonstrates that this is far from the case and that ICANN's policies and positions in this regard are not uniformly accepted by all members of the global internet community.

In reality, Plaintiffs have reason to believe that ICANN controls the "root" or "root zone." As Plaintiffs have learned from discussion with internet expert Bill Manning, the "root zone" is where all ccTLDs reside. ICANN has the sole power over who runs the ccTLDs; ICANN in the past has changed and redirected who has run certain ccTLDs (*i.e.*, who ran the registry). The ccTLD .IR, for example, resides in the "root zone." By virtue of its control over the "root zone," ICANN has the ability to redirect who runs .IR, *i.e.*, who runs the registry for .IR. ICANN can do this without affecting the operation of any of the second level domain names registered under the .IR ccTLD[1]. It is important to note that Plaintiffs have no desire, and will not take any actions, to harm individual websites registered under the .IR ccTLD. Plaintiffs strive to ensure that these sites continue to run smoothly through any collection actions.

Additionally, the Motion to Quash is silent on the fact that countries have treated their ccTLDs like property. For example, countries such as Columbia have monetized their ccTLDs, earning tens of millions of dollars in the process.

Thus, ICANN's Motion to Quash raises numerous factual issues that must be further developed in order for these novel and complex questions to be addressed by the Court properly. In particular, Plaintiffs in consulting with internet architecture and domain name system expert Bill Manning[2] and other preeminent figures, have identified the following factual issues, *inter alia*, as requiring further investigation through discovery:

- The formation, history and mission of ICANN;

---

[1] Domain names are structured hierarchically. The top level domain or TLD is the set of letters (usually two or three letters) to the right of the last period in any domain name. The second level domain name (*i.e.,* what most people refer to simply as the 'domain name') is the set of letters immediately to the left of the last period in any domain name. To illustrate, in www.example.com, ".com" is the top level domain and "example" is the second level domain.

[2] See Gebelin Decl. ¶¶ 2-6.

- ICANN's role in the establishment and/or operation of top level domains or TLDs, both generic (such as .com and .net) and country specific (such as .US, .UK and .IR);

- ICANN's role and limitations in carrying out the Internet Assigned Numbers Authority ("IANA") functions and its role in maintaining and operating the so-called "Root Zone Database."

- The contents of the Root Zone Database. Plaintiffs contend that the Assets reside in the Root Zone Database.

- The allocation and management of ccTLDs and ICANN's policies with regard to ccTLDs.

- The interrelationships between ICANN and the United States government.

- Whether or not TLDs in general, and ccTLDs in particular, can be privately owned and operated, are freely transferrable, may be sold and otherwise provide economic value to their managers.

- Whether ccTLD managers have exclusive rights to manage and operate their ccTLDs.

- Whether ICANN has the power to forcibly transfer a ccTLD without consent of all parties involved and whether this has ever been done in the past.

- The effects, if any, that a transfer of a ccTLD from one manager to another may have on the rights of second level domain owners within that ccTLD.

- Who has the rights to the particular ccTLDs at issue in this case.

In addition to the above, ICANN's Motion to Quash does not address the economic value of IP addresses, a separate asset, which Plaintiffs have attached in these proceedings and which raises its own factual questions requiring further discovery.

9

**C.     Plaintiffs' Need for Additional Discovery**

Plaintiffs have identified a number of additional avenues of discovery that will greatly assist them in developing the factual record and enable them to present a more complete picture for the Court. This discovery will directly counter the two main assertions set forth in ICANN's Motion to Quash: that the Assets are not property, and if the Assets are property, that ICANN lacks the ability to transfer the Assets to Plaintiffs. As demonstrated below, targeted discovery from both ICANN and a handful of third parties will allow this Court to review a full factual and legal record that will directly counter ICANN's positions.

### 1.     Impeaching Documents Demonstrate ICANN's Misleading Position.

Just this week, Plaintiffs obtained two key documents that discredit ICANN's position that ccTLDs are not government assets and that ICANN it unable to make changes to the root that would effect a transfer of a ccTLD.  *See* Gebelin Decl. ¶¶ 9-10 Exhibits E-F.

On September 23, 2014, Plaintiffs received a copy of a May 2, 2008 letter from the U.S. Department of Commerce's National Telecommunications and Information Administration ("NTIA") sent to Bill Manning regarding the Delegation Status of the .UM (United States Minor Outlying Islands) Top-Level Domain Name.  Gebelin Decl. ¶ 9, Ex. E.  In this letter, the NTIA clearly asserts that because it is associated with territory "under the jurisdiction of the United States Government," "the .UM ccTLD is a United States Government asset."  *Id*.  The letter also stated that on "January 16, 2007, during a Special Meeting of the ICANN Board of Directors, the Board Resolved (07.04) that the delegation of the .UM ccTLD be removed from the DNS root, and that it be returned to unassigned status," and referred to the minutes of that meeting.  *Id*.

Plaintiffs then retrieved the minutes for the January 16, 2007 ICANN Board of Directors Special Meeting from ICANN's website.  Gebelin Decl. ¶ 10, Ex. F.  In the portion of the

meeting dealing with the .UM ccTLD, Kim Davies provided "background information on this item," concluding that it would be "an appropriate action" to remove the ccTLD from the root, as the University of Southern California's Information Sciences Institute no longer desired to act as its registry.  *Id*.  Following discussion, the board "Resolved (07.04), that the delegation of .UM be removed from the DNS root, and that it be returned to unassigned status," approving the resolution by roll call vote 12-0.  *Id*.

Taken together, the NTIA letter and the ICANN minutes (the "Impeaching Documents") show that 1) ICANN has taken the position that it alone can act to change the delegation of a ccTLD in the root; and 2) the US Government recognizes ccTLDs as assets (or property) of the government with jurisdiction over the territory to which the ccTLD is associated. While the Impeaching Documents discredit the position advocated by ICANN, Plaintiffs need further discovery in order to present the Court with the supporting evidence such as documents and testimony that will provide the bases for the conclusions drawn in the Impeaching Documents.

**2.  <u>Discovery Sought by Plaintiffs</u>.**

In consultation with internet expert Bill Manning, Plaintiffs gained a credible reason to believe that testimony and documents could be acquired through discovery demonstrating that ICANN had a monopoly or complete control over the "root zone" such that ICANN is wholly and solely responsible for the mapping of top level domains (including ccTLDs) to their respective registries / name servers.  Gebelin Decl. ¶ 4.  Plaintiffs also have credible reason to believe that evidence exists beyond their control to demonstrate that there have been several instances in which ICANN changed and redirected who runs certain ccTLDs, including the ccTLDs .au, .co, .uk, and others in varying circumstances, including several ccTLD transfers in conjunction with the "monetization" of the ccTLDs by their respective governments, including

instances where the governments transferred control away from academic communities to government approved third parties that acquired contractual property rights to exploit the ccTLD and generate revenue.  Gebelin Decl. ¶ 5, Ex. G.  In fact, it appears that rights in the ccTLD .TV have been transferred to Verisign in an agreement generating millions of dollars a year for the Tuvalu government, and rights to the .CO ccTLD were recently transferred for more than $100 million.  Gebelin Decl. Exs. D, G.

As Plaintiffs have learned from their informal discovery thus far, including their furtive consultation with expert Bill Manning[3], their receipt of the Impeaching Documents, and other potentially inadmissible sources, Plaintiffs need to take the following discovery:

- Depositions

    1.      Kim Davies is the current manager of IANA Root Zone services and works within ICANN. IANA Root Zone services is responsible for coordinating ccTLD delegations and insuring that such delegations comply with IANA's policies and procedures. Mr. Davies will be able to testify that IANA is both authorized and able to transfer ccTLDs and has done so in the past.  Mr. Davies also made the presentation regarding the revocation of .UM to ICANN's Board of Directors in January 2007 during the meeting in which the directors passed the resolution to remove the ccTLD from the DNS root.  Gebelin Decl. ¶ 6(a), Ex. B.

    2.      Jeffrey LeVee and Joe Simms. Mr. LeVee was a signatory of ICANN's Articles of Incorporation. Mr. LeVee was intimately involved in the formation of ICANN and formed ICANN with his law firm partner Joe Sims with input from Dr. Jon Postel. Mr. Levee and Mr. Sims can testify as to ICANN's authority over the Root Zone, its

---

[3] Plaintiffs lost contact with Mr. Manning shortly before filing this motion, preventing Plaintiffs from providing the Court with his declaration.  Gebelin Decl. ¶ 8.

history and control over the Root Zone, and government contracts granting ICANN authority over the Root Zone. Gebelin Decl. ¶ 6(b), Ex. C.

3.      Jeff Neumann, vice president of Neustar, Inc. Neustar is a publicly traded American company that purchased Columbia's ccTLD (.CO) for $109 million in 2014. Mr. Neumann's testimony will directly counter ICANN's assertion that ccTLD's are not property; otherwise, Neustar will have spent a lot of money for nothing.  Gebelin Decl. ¶ 6(c), Ex. D.

4.      David Conrad, Chief Technical Officer for ICANN. Mr. Conrad works with internal and external stakeholders to develop a technology roadmap for the Internet identifiers system. He reports directly to Akram Atallah, president of ICANN's Global Domains Division.  Gebelin Decl. ¶ 6(d).

5.      Kevin Robert Elz is a computer programmer who registered .AU and lost it pursuant to an ICANN revocation. He is expected to testify as to ICANN's authority over the internet and its ability to re-delegate ccTLDs. Mr. Elz is believed to reside in Thailand.  Gebelin Decl. ¶ 6(e).

6.      Person Most Knowledgeable from Verisign regarding Verisign's purchase of .TV and .CC. These transactions evidence that ccTLDs are economic assets freely capable of being transferred for the benefit of judgment creditors similar to a piece of real estate such as an apartment building. Gebelin Decl. ¶ 6(e).

7.      Lesley Cowley, former Chief Executive at Nominet UK and the former Chair of ICANN's ccNSO Council. She was involved in the transfer of .UK away from the academic community and is involved in high-level ccTLD policy. She lives in Britain. Gebelin Decl. ¶ 6(f).

13

8.      Bill Manning, internet expert, former consultant to ICANN regarding domain name servers and former registrar of the .UM ccTLD.  Mr. Manning is expected to provide testimony regarding ICANN's control of the root zone including its decision to remove the .UM ccTLD from the root zone and to reassign other ccTLDs, and the US Department of Commerce's assertion of property rights over the .UM ccTLD.  Gebelin Decl. ¶¶ 2-5, Exs. A, E, F.

- Documents needed from ICANN

1.      All documents relating to ICP-1. ICP-1 refers to the Internet Coordination Policy first proposed by ICANN in May 1999. This policy states that in cases where there is misconduct, or violation of ICANN policies, the IANA (Internet Assigned Numbers Authority) reserves the right to revoke and to re-delegate a Top Level Domain to another manager. The underlying correspondence and internal notes related to this policy will reveal that ICANN is fully capable of transferring the Assets to plaintiffs.  Gebelin Decl. ¶ 7(a).

2.      All documents relating to the re-delegations of ccTLDs of .ML (Mali); .KE (Kenya); .AU (Australia); .PN (Petcairn Island); .EH (Western Sahara); .UM (US Minor Outlying Islands); and .CN (China). All of these ccTLDs have been re-delegated or re-assigned by ICANN. These documents will reveal that, contrary to ICANN's representations in its Motion to Quash, ICANN is fully capable of transferring the Assets to plaintiffs just as it has with respect to the aforementioned ccTLDs. Gebelin Decl. ¶ 7(b).

14

3.      All documents relating to the IANA function, including but not limited to documents referring to the scope, purpose and/or role of the IANA function. The IANA function has full control and authority over ccTLDs.  Gebelin Decl. ¶ 7(c).

4.      All documents relating to Kim Davies' presentation at an ICANN meeting in Marrakesh in 2008. At this meeting Kim Davies discussed the scope, role and purpose of the IANA function.  Gebelin Decl. ¶ 7(d), Ex. B.

5.      All documents related to payments ICANN receives from registrars that offer .IR domain registrations to the public. These registrars include, but are not limited to, Instra Corporation and Only Domains.com. These companies are conducting business with the judgment debtors and maintain an economic relationship with ICANN[4]. Gebelin Decl. ¶ 7(e).

6.      All documents related to the ccNSO (Country Code Names Supporting Organization) Framework of Interpretation Working Group, including, but not limited to its introduction, background, charter and recent version of the Framework of Interpretation WG Progress Report of March 2014. These documents will show that a large and reputable group of country code TLD and Government Advisory Committee representatives are working on policies with respect to delegation and re-delegation of ccTLDs that are in direct conflict with positions taken by ICANN in its Motion to Quash. Gebelin Decl. ¶ 7(f).

---

[4] This discovery is likely to reveal that these companies may not only be violating international sanctions treaties by conducting business with Iran, but that they derive income from the judgment debtors and pass along a portion of that income to ICANN.

7. Any documents related to the United States government overruling, setting aside or failing to implement or execute a ccTLD delegation or re-delegation requested by ICANN. Gebelin Decl. ¶ 7(g).

8. All documents evidencing ccTLD registrars agreeing to provide funds to ICANN. Gebelin Decl. ¶ 7(h).

- <u>Additional Documents needed from third parties.</u>

1. From Verisign, documents relating to its acquisition of the .TV and .CC ccTLDs. Gebelin Decl. ¶ 7(i).

2. From Neustar, documents relating to its acquisition of the .CO ccTLD. Gebelin Decl. ¶ 7(j).

## <u>ARGUMENT</u>

### A.    <u>Procedural Framework</u>

This is not a typical litigation between a plaintiff and a defendant, but is a supplemental proceeding—a special post-judgment garnishment proceeding governed by Fed. R. Civ. P. 69(a) and through that rule the relevant provisions of the District of Columbia Code and Superior Court Rules. Rule 69(a)(1) provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of a judgment or execution—must accord with the procedure of the state where the court is located….". Fed. R. Civ. P. 69(a)(1). Rule 69(a)(2) permits a judgment creditor to engage in broad discovery "in aid of the judgment or execution" from "any person." *See also Falicia v. Advanced Tenant Services, Inc.*, 235 F.R.D. 5, 7 (D.D.C. 2006) (holding Rule 69(a)(2) permits post-judgment discovery against non-parties); *Lumber Liquidators, Inc. v. Sullivan*, 939 F. Supp. 2d 57, 59-60 (D. Mass. 2013) (noting that Rule 69 affords liberal discovery to judgment).

In accordance with Rule 69(a)(1), plaintiffs attached the aforesaid Assets pursuant to D.C. Code § 16-544. The attachment provisions of the District of Columbia Code contain specific procedures to address issues of fact raised by a Writ of Attachment served on a garnishee, such as ICANN. Specifically, D.C. Code sections 16-551 and 16-553 allow a plaintiff who disputes a garnishee's answer to interrogatories to commence a jury trial proceeding by "travers[ing] the [garnishee's] answer".[5] Such a trial is then followed by the Court's entry of judgment. D.C. Code § 16-556. In addition, Section 16-550 provides that "[t]he court may make all orders necessary for the preservation of the property attached…" D.C. Code § 16-550.

Under both the Federal Rules of Civil Procedure and local procedural rules, trial proceedings are necessarily preceded by some period of discovery to enable the parties to develop facts and determine the issues that are actually in dispute. Moreover, Federal Rule 69(a)(2) expressly authorizes judgment creditors to engage in discovery in aid of execution. District of Columbia Superior Court Rule 69-I(a) and (b) likewise authorizes judgment debtors to engage in discovery with regard to assets subject to attachment.

Consistent with the typical orderly progression of litigation from discovery to trial, plaintiffs commenced this attachment proceeding by seeking discovery from ICANN through their Subpoena. Plaintiffs also obtained ICANN's agreement that they would not be required to proceed to trial and judgment under the District of Columbia Code until any discovery disputes

---

[5] "A garnishee … who may make claim to the property attached may file an answer defending against the attachment. The answer may be considered as raising an issue without any reply, and any issue of fact thereby may be tried with a jury if any party so desires." D.C. Code § 551.

"If a garnishee answers to interrogatories that he does not have property or credits of the defendant, or has less than the amount of plaintiff's judgment, the plaintiff may traverse the answer as to the existence or amount of the property or credits, and the issue thereby may be tried as provided in section 16-551." D.C. Code § 553.

were finally resolved. ICANN, however, has deliberately attempted to avoid discovery and to dictate how and when this matter should proceed on the merits by filing its potentially dispositive Motion to Quash without having produced any documents, although ICANN finally did produce some limited documents on September 19, 2014, and then only after Plaintiffs filed a motion to compel the production. In addition, as discussed above, ICANN's Motion to Quash raises numerous factual issues that were not covered by Plaintiffs' original document production Subpoena and which require further discovery from ICANN and other third parties.

**B.      The Court Should Approve a Discovery Period**

As a general rule, "[D]istrict courts have 'broad discretion in structuring discovery.'" *Brooks v. Kerry*, 2014 WL 1285948, *9 (D.D.C. March 31, 2014) (citations omitted). *See also CXS Transp., Inc. v. Denardo*, 2013 WL 1213067, *7 (E.D. Mich. March 25, 2013) (district court has discretion to extend discovery deadlines in garnishment proceedings); *Salinas v. AT&T Corp.*, 2008 WL 8053983 (S.D. Tex. March 5, 2008) (noting courts discretion with regard to discovery matters).

In essence, ICANN is asking the Court to dismiss the Writs of Attachment based on its own unilateral and untested submission. This is akin to a defendant filing a Federal Rule 56 summary judgment motion at the very outset of a case. Since the procedural posture of ICANN's Motion to Quash is similar to that of a summary judgment motion filed at an early stage of litigation, the case law under Federal Rule 56(d) is particularly on point. Rule 56(d) provides:

> (d) When Facts are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration, that for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

*Id.*

District of Columbia courts hold that in situations similar to this one, where a court is presented with a pre-discovery summary judgment motion, "a motion requesting time for additional discovery should be granted almost as a matter of course…" *Dinkel v. Medstar Health, Inc.*, 286 F.R.D. 28, 31 (D.D.C. 2012) (citations and internal quotations omitted) (denying without prejudice pre-discovery summary judgment motion and granting plaintiffs' motion to conduct discovery pursuant to Rule 56(d)); *Richie v. Vilsack*, 287 F.R.D. 103, 105 (D.D.C. 2012) (same). Indeed, "[T]he purpose of Rule 56(d) is to prevent railroading the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Seed Co., Ltd. v. Westerman*, 840 F. Supp. 2d 116, 121 (D.D.C. 2012) (citations omitted) (denying without prejudice defendants' summary judgment motions and granting plaintiffs' request for discovery).

As with discovery matters generally, the decision to grant a continuance to enable discovery pursuant to Rule 56(d) is within the discretion of the district court. *See, e.g., Dinkel* at 31*; Seed Co. Ltd.* at 121-24 (noting that a decision on summary judgment is "disfavored when additional development of facts might illuminate the issues of law requiring decision.") (citations omitted). Under the Rule 56(d) case law, plaintiffs are required to (1) explain the additional facts sought to be discovered and why they are necessary, (2) explain why the plaintiff could not produce the facts and (3) show that the information is in fact discoverable. *See Richie* at 105.

While Rule 56(d) is applicable here only by analogy, plaintiffs have nevertheless complied with its requirements. Plaintiffs have submitted the declaration of attorney Steven T. Gebelin, which is cited herein, detailing the additional discovery needed and why the information is discoverable and not available to the plaintiffs.

In particular, Plaintiffs seek discovery concerning two of ICANN's primary arguments—that the Assets are not property and that, if they are property, ICANN lacks the ability to transfer them. Plaintiffs are terror victims who possess FSIA judgments against the regimes that provided assistance to their terrorist attackers. Plaintiffs are not experts in the internet and do not possess any special knowledge or information concerning the history of TLD distribution, ICANN's role in that regard or the economic value of TLDs. The sole source of information available to Plaintiffs on these issues is material published online, much of which comes from ICANN's own website and is relied upon by ICANN in its Motion to Quash. Through conversations with various persons knowledgeable on these issues, Plaintiffs have come to understand that ICANN and others directly connected to the operation of the internet possess non-public information relevant to the issues. To the extent such information is not subject to any privilege, it is discoverable. In addition, to the extent such information is proprietary or confidential, plaintiffs have no objection to entering into an appropriate confidentiality agreement.

Plaintiffs have identified certain specific documents and categories of documents which would be very useful in countering ICANN's unilateral claims that the Assets are not property and that ICANN lacks the ability to transfer them. These documents include documents concerning, *inter alia*, the re-delegation of specific TLDs by ICANN and internal documents concerning ICP-1 (cited by ICANN as Exhibit F to the Enson Declaration), which will likely demonstrate that ICANN does have the capability to transfer a TLD; the acquisition of specific ccTLDs identified by plaintiffs as having been monetized by their original owners to demonstrate the potential economic value of ccTLDs generally; monies ICANN receives from any source regarding the Assets at issue herein to demonstrate the economic value of these particular Assets; and the ccNSO Framework of Interpretation Working Group and the recent

WG Progress Report of 2014 to show that global internet policies concerning delegation and re-delegation of ccTLDs are not as ICANN has presented and indeed are in conflict with ICANN's position.

In addition, Plaintiffs have identified certain specific individuals who likely can provide testimony on these issues. Kim Davies and David Conrad work for ICANN and have personal knowledge about domain name distribution and policies related thereto. Jeffrey LeVee and his law firm partner Joe Sims have been involved with Jon Postel (a key early founder of the internet) and ICANN from a very early stage and have personal knowledge about the history and powers of ICANN. The other third party witnesses—Jeff Neumann of Neustar, Inc., Kevin Robert Elbaz, the original .AU registrant, a knowledgeable person from Verisign, Inc. and Lesley Cowley, former Chief Executive at Nominet UK and the former Chair of ICANN's ccNSO Council, can provide testimony concerning the value and transferability of ccTLDs. All of these witnesses likely have information that cannot be found in documents and/or can elucidate and explain the documents Plaintiffs seek.

Plaintiffs therefore respectfully request that the Court adjourn the Motion to Quash *sine die* to afford plaintiffs a reasonable amount of time to conduct discovery and to prepare their opposition to the Motion to Quash after discovery is complete. In addition, in order to preserve plaintiffs' rights under the District of Columbia Code, plaintiffs respectfully request (a) that their time to file (i) the Traverse of ICANN's Answers pursuant to D.C. Code §§ 16-522, 16-553 and/or D.C. Sup. Ct. Rule 69-I(d) and/or (ii) the Motion for Judgment of Condemnation pursuant to D.C. Code § 16-556 and/or D.C. Sup. Ct. Rule 69-I(e) be adjourned until after the Court enters an Order either granting or denying ICANN's Motion to Quash; and (b) that their liens on the Assets be similarly extended.

## **CONCLUSION**

For the reasons set forth herein, the Plaintiffs' motion should be granted in all respects.

Dated:    September 25, 2014

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

By: _____
        Robert J. Tolchin

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627
RTolchin@BerkmanLaw.com

RAINES FELDMAN, LLP
*Attorneys for the Plaintiffs*

By:   /s/ Erik Syverson_____
        Erik Syverson

9720 Wilshire Boulevard, Fifth Floor
Beverly Hills, California 90212
310-440-4100
Fax: 310-691-1036
ESyverson@RainesLaw.com

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 25th day of September, 2014, that a copy of the forgoing Motion to Compel Production of Documents in Response to Subpoena together with the Memorandum of Law in Support of Motion to Compel Production of Documents in Response to Subpoena and Exhibits A and B was served via United States District Court ECF filing system and/or via email on counsel for ICANN:

Tara Lynn R. Zurawski (DC Bar No. 980960)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113

Eric Enson (*pro hac vice*)
JONES DAY
555 S. Flower Street
50th Floor
Los Angeles, CA 90071

Jeffrey A. LeVee (*pro hac vice*)
JONES DAY
555 S. Flower Street
50th Floor
Los Angeles, CA 90071

Dated:   September 25, 2014          By:   /s/ Erik S. Syverson
                                          Erik S. Syverson (*pro hac vice*)

1